985 So.2d 900 (2007)
EX PARTE DUCK BOO INTERNATIONAL COMPANY, LTD.
In re Tonya Leann Leytham, administratrix and personal representative of the estate of Tiffany Stabler, deceased, and as mother and next friend of Tiffany Stabler, deceased
v.
Kia Motors America, Inc., et al.
1061114.
Supreme Court of Alabama.
November 16, 2007.
*902 Michael D. Knight and Karen Tucker Luce of McDowell Knight Roedder & Sledge, L.L.C., Mobile, for petitioner.
George W. Finkbohner III, David G. Wirtes, Jr., and George M. Dent III of Cunningham, Bounds, Crowder, Brown & Breedlove, L.L.C., Mobile, for respondent.
LYONS, Justice.
The petitioner, Duck Boo International Company, Ltd., a manufacturer of seat belts for motor vehicles, is a defendant in an action pending in the Mobile Circuit Court. Kia Motors America, Inc., and Kia Motors Corporation (collectively referred to as "Kia Motors"), are also defendants in that action. Tiffany Stabler was killed in an automobile accident while driving a vehicle manufactured by Kia Motors and equipped with a seat belt manufactured by Duck Boo, which Stabler was wearing at the time of the accident. Tonya Leann Leytham, in her capacity as administratrix and personal representative of Stabler's estate, and as Stabler's mother and next friend, sued Duck Boo, Kia Motors and several other defendants. Duck Boo is located in South Korea and contends it does no direct business with, or in, the United States. Duck Boo filed a motion to dismiss the complaint based upon a lack of personal jurisdiction. The trial court denied the motion and Duck Boo has filed a petition for the writ of mandamus asking us to direct the trial court to dismiss the claims against it on the basis that the trial court lacks personal jurisdiction over Duck Boo. We deny the petition.

I. Proceedings in the Trial Court

A. Procedural Matters
The accident that is the basis of Leytham's complaint occurred on or about July 4, 2004, when Stabler was involved in a fatal automobile accident while she was driving a 1999 Kia Sephia automobile. Leytham alleged that Stabler was wearing her seat belt at the time of the accident and that the seat belt, which was manufactured by Duck boo, failed, allowing Stabler to be ejected from the vehicle and to suffer fatal injuries. Specific to Duck Boo, Leytham alleged that Duck Boo is a foreign corporation with its principal place of business in a place other than Alabama.
Duck Boo filed a motion to dismiss based upon lack of personal jurisdiction to which it attached the affidavit of Jung-Ho Choi, the director in charge of the technical department at Duck Boo. Leytham thereafter served interrogatories and requests for production on Duck Boo. Reasserting *903 the jurisdictional arguments contained in its motion to dismiss and also arguing that Leytham had not alleged a colorable claim of jurisdiction, Duck Boo asserted that a response to the discovery was not required. Leytham filed a motion to compel, contending that Duck Boo, by placing the seat belts into the stream of commerce in the United States without any limitations, should reasonably expect to be haled into court in one of the states in which the product is used, and for that reason, she says, Duck Boo was required to respond to discovery directed to the issue of personal jurisdiction.
Leytham amended her complaint to add additional jurisdictional allegations. The trial court thereafter granted the motion to compel before Duck Boo had filed a response. Duck Boo moved to reconsider, contending that simply allowing a product to be placed into the stream of commerce was insufficient to subject an entity to jurisdiction in Alabama, and that evidence that the defendant had purposefully availed itself of the privilege of doing business in Alabama and that it had purposefully directed activities toward the State was required. The trial court denied the motion to reconsider. Duck Boo filed a subsequent motion to dismiss for lack of personal jurisdiction. The trial court denied the motion to dismiss eight days after denying the motion to reconsider.

B. Matters Relevant to Duck Boo's Contacts
Leytham's complaint alleges that the following establish that the trial court has personal jurisdiction over Duck Boo: Duck Boo "purchased and carries liability insurance that provides insurance coverage in every one of the United States, including Alabama"; Duck Boo "has engaged in designing, manufacturing and marketing its seatbelts and other products to conform with United States governmental and industry wide safety and design standards and criteria, including safety standards by United States regulatory agencies and state common law court decisions, including the Courts of Alabama"; Duck Boo "and/or its representatives have attended American automobile manufacturing trade shows and/or have participated in trade groups to ensure that [its] products comply with governmental and industry wide safety and design standards and criteria, including government standards imposed by legislative bodies, regulatory agencies and/or state common law court decisions, including the Courts of Alabama"; Duck Boo "has advertised through the World Wide Web and print and other media with a goal towards expanding the markets for its seatbelts and other products to all of the United States, including Alabama"; Duck Boo "has employed personnel and consultants ... to provide guidance and advice about how to successfully market its seatbelts and other products to automobile and other manufacturers who, in turn, sell their products in all of the United States, including Alabama"; Duck Boo "has retained American legal counsel ... to defend and protect [its] interests when foreseeable product liability suits would be filed against it in the United States, including Alabama"; Duck Boo attached to the seat belt in the automobile driven by Stabler "a label written in the English language and stating, among other things, that it was manufactured by [Duck Boo] International Co., Ltd., and that it complies with the United States Federal Motor Vehicle Safety Standards applicable to seatbelts"; Duck Boo "contracted with one or more companies in the United States to conduct seatbelt testing, it being the purpose of [Duck Boo] to avail itself of markets throughout the United States including Alabama"; Duck Boo "has had many different models of its seatbelts shipped to *904 the United States to be tested for compliance with the United States of American Federal Motor Vehicle Safety Standard 209 by a U.S. based companyi.e., SGS U.S. Testing Company, Inc."; Duck Boo "attaches identification tags to the seatbelts that it manufacturers, just like the seatbelt with the label in English referenced hereinabove"; and Duck Boo "previously included on its website a time line stating that in 1987 it began to export vehicle seatbelts to the United States." In support of her right to compel discovery, Leytham submitted to the trial court pleadings in actions against Duck Boo in other states, documents produced by Kia Motors reflecting testing by SGS U.S. Testing Company, Inc., and an affidavit of one of Leytham's attorneys attaching a photograph of the Duck Boo seat belt on the vehicle involved in the accident made the basis of this claim, which reflects that Duck Boo manufactured the seat belt in accordance with United States Federal Motor Vehicle Safety Standards.
Duck Boo's motion to dismiss relied upon the affidavit of Choi, who testified that Duck Boo conducts business entirely within the Republic of Korea and maintains no agents, physical presence, or property within the State of Alabama or the United States; that it manufactures vehicle-restraint systems that it sells exclusively to Korean final-stage motor-vehicle manufacturers, who are solely responsible for integrating Duck Boo's restraint system into their final product; and that it has no control over where the final product is marketed, sold, or distributed, because the marketing, selling, and distributing is left to the final-stage manufacturer. Choi also testified that Duck Boo is not qualified, authorized, or registered to do business in Alabama; that it does not sell any products in Alabama and has never entered into any contract in Alabama; that it has never entered into a contract with an Alabama resident and has never entered into a contract to be performed in Alabama; that it has never transacted business in Alabama and is not currently doing business in Alabama; that it has never provided any services in Alabama; that it does not now pay, and has never paid, taxes in Alabama; that it does not now own, rent, purchase, or lease, and has not ever owned, rented, purchased, or leased, any real or personal property in Alabama; that it does not maintain any office or place of business in Alabama; that it does not have any assets in Alabama; that it does not have any distributors in Alabama; that it has never had an agent for service of process in Alabama; that it has never maintained a telephone, telex, or telefax number or address in Alabama; that it does not have, and never has had, any employees (including salespersons, representatives, agents, or servants) who conducted business in Alabama or who were residents of Alabama; that it does not do, and has never done, any advertising in Alabama; that it does not solicit, and has not ever solicited, business directly or through agents in Alabama; that it does not provide regular advice to customers in Alabama; that it has never marketed any product in Alabama; that it has no officers, employees, or directors living in Alabama; that it has never applied for a loan or acted as a guarantor or cosigner on a bank loan in Alabama; that it has never maintained any records, bank accounts, payroll records, books of account, and/or any other business record in Alabama; that it has never initiated litigation in Alabama; that it has never consented to personal jurisdiction of a court in Alabama; that it never anticipated or intended that it would be subject to personal jurisdiction in Alabama; that it does not derive any revenue from Alabama; that all transactions relating to Duck Boo's sale of restraint *905 systems to vehicle manufacturers (including Kia Motors) occurred in the Republic of Korea; that no aspect of the relationship between Duck Boo and Kia Motors takes place in the United States; that Duck Boo did not install the restraint systems into the automobile made the basis of this action; that Duck Boo did not manufacture, sell, or distribute the automobile made the basis of this action; that Duck Boo did not service, maintain, or repair the automobile made the basis of this action or any of its components; that Duck Boo had no knowledge of what happened to its vehicle-restraint systems after it sold them to Kia Motors (a Korean corporation) in the Republic of Korea, beyond the general knowledge that its restraint systems would be installed in vehicles in the Republic of Korea; and that Duck Boo was not involved in bringing the subject automobile, restraint systems, or any components into the United States or Alabama.

II. Standard of Review
We recently addressed the standard of review in a proceeding challenging the trial court's ruling on a motion to dismiss for lack of personal jurisdiction in Ex parte Bufkin, 936 So.2d 1042, 1044-45 (Ala.2006):
"`"The writ of mandamus is a drastic and extraordinary writ, to be `issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995)." Ex parte Carter, [807 So.2d 534,] 536 [(Ala. 2001)].'
"Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001). `An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.' Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).
"`"`In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).'"
"`Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) ("When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. *906 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.") (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).'
"Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004)."

III. Analysis

A. Leytham's Contention that Duck Boo's Petition Is Premature
Leytham opposes Duck Boo's petition for the writ of mandamus on the basis that the trial court did not err in denying the motion to dismiss "at least until jurisdictional discovery is complete." Duck Boo responds to Leytham's contention that its petition is premature by noting that it does not take issue with the propriety of the trial court's order granting the motion to compel discovery. Instead, Duck Boo contends that prematurity does not justify denial of the petition because Leytham did not ask the trial court to delay its ruling on the motion to dismiss until Duck Boo responded to discovery; because the trial court did not condition its denial of Duck Boo's motion to dismiss on whether Duck Boo had responded to discovery; and because counsel for Leytham advised counsel for Duck Boo that she no longer needed or wanted the discovery after the trial court denied the motion to dismiss.
We cannot reject Leytham's defense of prematurity on the basis of alleged communications between counsel because the grounds for such rejection rely upon allegations of communications between counsel that are not supported by the materials before us on this petition for the writ of mandamus. See Ex parte Jett, [Ms. 1060281, July 20, 2007] ___ So.2d ___ (Ala.2007) (See, J., concurring specially). Nor are we impressed by the absence from the materials submitted to this Court of any objection by Leytham to the trial court's consideration of the motion to dismiss before it received responses to the outstanding discovery requests and the unconditional denial of the motion by the trial court. As we recently noted in Ex parte Reindel, 963 So.2d 614, 624 (Ala.2007):
"[I]t must be remembered that `[a] denial of a ... motion to dismiss for want of personal jurisdiction is interlocutory and preliminary only.' Ex parte McInnis, 820 So.2d [795,] 798 [(Ala.2001) ]. `After such a denial, the continuation of personal jurisdiction over a defendant who appropriately persists in challenging it in [an] answer to the complaint and by motion for summary judgment or at trial depends on the introduction of substantial evidence to prove the ... jurisdictional allegations in the ... complaint.' Id."
Moreover, a petitioner seeking a writ of mandamus to direct the trial court to dismiss an action against the petitioner for want of personal jurisdiction has the burden of establishing a clear legal right to the relief. See Ex parte Barton, 976 So.2d 438 (Ala.2007); Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001). We have no record of the argument presented at the hearing on the motion to compel discovery. Nor is there any indication that a second hearing took place before the trial court entered the order denying the motion to dismiss eight days later. Rather than disclaiming in this Court any challenge as to the propriety of the trial court's order compelling further discovery, it was incumbent upon Duck Boo, in order to show a clear legal right to relief by mandamus, to obtain a determination in the trial court as to the mootness of the order compelling discovery as a prerequisite to resisting Leytham's contention of prematurity.
*907 Leytham, however, must overcome another obstacle in order to sustain her defense to the petition based upon prematurity. Leytham must show that the outstanding discovery is material to the disposition of the issue of personal jurisdiction. Duck Boo contends that Ex parte Alloy Wheels International, Ltd., 882 So.2d 819, 827 (Ala.2003), holds that merely placing a product in the stream of commerce does not constitute evidence of purposeful direction of the product to the forum state. Duck Boo then contends that, under Alloy Wheels, evidence of purposeful direction of its activities toward the State of Alabama, as opposed to general direction of activities toward the United States, is required. Duck Boo further states that Leytham's outstanding discovery requests are not aimed at determining whether Duck Boo purposefully directed its activities toward the State of Alabama, as opposed to any other state in the United States. Consequently, according to Duck Boo, Leytham's contention of prematurity does not prevent this Court from reaching the merits.
We found no impediment to resolution of the jurisdictional issue by reason of the pendency of outstanding discovery requests in Ex parte Gregory, 947 So.2d 385 (Ala.2006), where analysis of the interrogatories and requests for production yielded the conclusion that the outstanding discovery requests related to the merits rather than the jurisdictional issue. Here, the complaint alleges no facts that would base jurisdiction on conduct specifically directed toward Alabama, as opposed to conduct directed toward every state. To be sure, there are outstanding interrogatories seeking information without specification as to contacts specifically with Alabama that theoretically could produce answers revealing contacts with Alabama. Nevertheless, the lack of answers to these interrogatories does not deprive Leytham of the information sought by the interrogatories, because Choi's affidavit furnishes information particularly negating any specific contact with Alabama. Likewise, to the extent that the outstanding request for production seeks documents that could be useful in determining activity specific to Alabama, the absence of a response does not deprive Leytham of information that might be developed on the issue of activity within Alabama because of the availability to Leytham of the Choi affidavit. Leytham's outstanding discovery responses do not seek information specific to activities in Alabama, nor does Leytham contend that the outstanding discovery responses are needed in order to attempt to impeach the matters set forth in the Choi affidavit. In fact, Leytham contends, as discussed below, that the information sought in the interrogatories and request for production is germane to evidence that becomes useful in the event we overrule Alloy Wheels, as Leytham has asked us to do. Therefore, in order to sustain Leytham's contention of prematurity, we must consider whether we should revisit our holding in Alloy Wheels.

B. Generally Applicable Principles of Law
In Ex parte Bufkin, 936 So.2d at 1045, this Court stated the principles generally applicable to challenges to jurisdiction:
"`A state has jurisdiction over a person or corporation so long as its "long-arm statute" reaches the person or corporation and the state's jurisdiction comports with the requirements of due process.' Leithead v. Banyan Corp., 926 So.2d 1025, 1029-30 (Ala.2005). Rule 4.2, Ala. R. Civ. P., Alabama's long-arm rule, provides:

*908 "`An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States....'
"Therefore, Alabama's long-arm rule extends the personal jurisdiction of Alabama courts to the limits of due process permissible under the Fourteenth Amendment to the United States Constitution and Art. I, § 13, Constitution of Alabama of 1901. See Ex parte Alloy Wheels Int'l, 882 So.2d 819, 822 (Ala. 2003).
"`The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to jurisdiction in its courts only when that defendant has had "minimum contacts" with the forum state.' Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638, 644 (Ala.2003) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945))."
We must apply these principles in light of the facts of this case and our precedent. Choi's affidavit does not contradict the allegations of the complaint relating to jurisdiction, which, as previously noted, is silent on specific activities in Alabama. Nor does Choi's affidavit contradict the evidence in Leytham's submission except where it states that Duck Boo "had no knowledge of what would become of its restraint systems after it sold them to Kia Motors Corporation (a Korean corporation) in the Republic of Korea, beyond the general knowledge that [Duck Boo] restraint systems would be installed in vehicles in the Republic of Korea." The affidavit of Leytham's counsel describing the photograph of the label on the seat belt in the Kia Sephia automobile involved in the accident here reflects conduct of Duck Boo consistent with its foreknowledge that the product would be exported to the United States for sale in the United States. Nevertheless, there is no evidence indicating that Duck Boo acted in any way specifically directed to the Alabama market other than to the extent that the evidence establishes an intent to serve the United States market.

C. Effect of Alloy Wheels
In Alloy Wheels, this Court, in an opinion authored by Justice Johnstone, unanimously held:
"The plaintiff now before us argues that the evidence establishes an intent or purpose in Alloy Wheels to serve, in the words of its brief, `the American market.' Evidence of an intent or purpose to serve `the American market,' however, absent evidence of `an intent or purpose to serve the market in the forum State,' does not establish the `action of the defendant purposefully directed toward the forum State' that would constitute contact sufficient to warrant the exercise of personal jurisdiction over the defendant by the forum state. [Ex parte] McInnis, [820 So.2d 795,] 804 [(Ala.2001) ] (quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). On the contrary, the plaintiff now before us has not submitted substantial evidence that Alloy Wheels `purposefully directed' any action `at the forum State [other] than the mere act of placing a product in the stream of commerce.' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), Asahi, and McInnis, supra. No evidence establishes sufficient *909 minimum contacts between Alloy Wheels and the State of Alabama."
882 So.2d at 827 (emphasis added).
Leytham first contends that Alloy Wheels is distinguishable from this case. We do not consider Alloy Wheels to be distinguishable. The defendant in Alloy Wheels manufactured the component in the United Kingdom for installation on a car manufactured in the United Kingdom and shipped to the United States. The component included markings applied by the manufacturer in conformity with Federal Motor Vehicle Safety Standards. Recognizing that Alloy Wheels serves as a formidable obstacle, Leytham, alternatively, asks us to overrule Alloy Wheels.
The United States Supreme Court has not given clear guidance on this issue. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court stated:
"When a corporation `purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S. [235, 253 (1958)], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State."
The Court there held that the unilateral, isolated act of a purchaser of a vehicle in driving through Oklahoma did not subject the New York seller to jurisdiction in Oklahoma. 444 U.S. at 298, 100 S.Ct. 559. In Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Court considered whether the defendant's act of placing the product into the stream of commerce subjected it to jurisdiction in a forum that the product foreseeably reached. The Court split three ways, with four Justices in one camp, four in another, and Justice Stevens in the middle. Four Justices emphasized that the defendant must insert the product into the stream of interstate commerce with a reasonably specific "intent or purpose to serve the market in the forum State," 480 U.S. at 112, 107 S.Ct. 1026 (plurality opinion of O'Connor, J.); while four dissenting Justices emphasized that placement into the stream of commerce with reasonable foreseeability of the arrival of the product into the forum state was sufficient. 480 U.S. at 117, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). Justice Stevens provided the fifth vote to hold that a finding of personal jurisdiction in that case did not comport with due process. In his special writing, after concluding that the fundamental unfairness was sufficiently clear as to obviate the necessity for articulation of a standard, Justice Stevens stated:
"Second, even assuming that the test ought to be formulated here, Part II-A misapplies it to the facts of this case. The plurality seems to assume that an unwavering line can be drawn between `mere awareness' that a component will find its way into the forum State and `purposeful availment' of the forum's market. [480 U.S. at 110-13.] Over the course of its dealings with Cheng Shin, Asahi has arguably engaged in a higher quantum of conduct than `[t]he placement of a product into the stream of commerce, without more....' Ibid. [480 U.S. at 112.] Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components. In most circumstances I would be inclined to conclude that a regular course of dealing that results in deliveries of over *910 100,000 units annually over a period of several years would constitute `purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world."
480 U.S. at 122, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment) (emphasis added).
Leytham points to several jurisdictions, some of which involve claims against Duck Boo, that have taken a broader approach to personal jurisdiction than did this Court in Alloy Wheels. According to Alison G. Myrha, Fifth Circuit Survey June 2005-May 2006, Civil Procedure, 39 Tex. Tech L.Rev. 689, 718 n. 120 (2007), 19 jurisdictions adhere to a test comparable to the test used in Alloy Wheels, while 8 jurisdictions reject the requirement of additional conduct beyond the placement of the product into the stream of commerce. According to the article, in the United States Courts of Appeals, the Fifth and Eighth Circuits have embraced the more relaxed standard set forth by Justice Brennan while the First, Fourth, Sixth, and Eleventh Circuits have adopted the more restrictive standard set forth by Justice O'Connor. Recently, in Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 475 (5th Cir.2006), Judge DeMoss, concurring specially in a holding that the defendant was subject to suit in Louisiana, noted that while he was bound by Fifth Circuit precedent to apply the less restrictive view urged by Justice Brennan in Asahi, he preferred the "stream-of-commerce-plus" approach advocated by Justice O'Connor. Judge DeMoss stated:
"Asahi is the last in a long line of Supreme Court cases to define the contours of [the `minimum contacts'] test, and it left the test in a state of complete disarray.... It is the stream of commerce approach that the Fifth Circuit follows and that I criticize here (although I recognize its binding effect). The stream of commerce, or `mere foreseeability,' approach requires only that a nonresident defendant place its product in the stream of commerce with the expectation that the product will reach the forum state. Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 380 & n. 7 (5th Cir.2002). As Judge Niemeyer of the Fourth Circuit eloquently stated in Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir.1994), `To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism.' Justice O'Connor's stream-of-commerce-plus approach states that mere foreseeability is not enough and requires `[a]dditional conduct of the defendant ... indicat[ing] an intent or purpose to serve the market in the forum State,' and thereby better comports with our country's principles of federalism. See Asahi, 480 U.S. at 112, 107 S.Ct. 1026.
"....
"For the above reasons, I hope Insta-Mix will apply for a writ of certiorari and I urge the Supreme Court to take up the minimum contacts issue and resolve it and the increasing circuit divide with clarity."
The United States Supreme Court denied certiorari. Insta-Mix, Inc. v. Luv n' care, Ltd., 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d 951 (2006). We, of course, can only speculate as to the basis for the denial. It is noteworthy that in 2002 and 2003 the defendant in Luv n' care, Ltd. v. Insta-Mix, Inc. filled 65 purchase orders for bottles to be sent to Louisiana and sent invoices to Wal-Mart Stores, Inc., confirming *911 the orders bound for Louisiana. Also, Judge DeMoss's plea for greater respect for federalism runs counter to Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 n. 10, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("The restriction on state sovereign power described in World-Wide Volkswagen Corp. [v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)], however, must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That Clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns.").
In support of her contention that Alloy Wheels should be overruled, Leytham urges us, in her response to Duck Boo's petition, to embrace Justice Stevens's standard in this proceeding based on "the volume, the value, and the hazardous character" of the seat belt. As for the hazardous character of the product, Leytham states: "Moreover, the seat belts are at least theoretically designed to protect citizens of Alabama and other states, so the `hazardous character' of [Duck Boo's] defective seat belts further supports jurisdiction, at least under [Justice] Stevens's reasoning." Leytham's brief at 16-17. With regard to volume and value, Leytham concedes that that determination cannot be made based on the materials before us. She states: "Ms. Leytham is entitled to develop similar evidence as to how many seat belts [Duck Boo] sold to Kia [Motors] and other automobile manufacturers that sold vehicles across the United States." Leytham's brief at 15-16.

IV. Conclusion
We note that the doctrine of stare decisis has diminished impact in a setting where we are dealing with a constitutional issue. See Ex parte State Farm Fire & Cas. Co., 764 So.2d 543, 547 n. 8 (Ala.2000) ("The doctrine of stare decisis has a diminished efficacy in instances where the former decision is grounded in an erroneous application of the Constitution and corrective action is limited to constitutional amendment or overruling the earlier decision."). In World-Wide Volkswagen, the Supreme Court embraced the stream-of-commerce test, stating: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98, 100 S.Ct. 559. Because Alloy Wheels embraced a plurality opinion in Asahi and adopted a "stream-of-commerce-plus" theory, it is at least arguable that we departed from binding precedent in World-Wide Volkswagen, where the stream-of-commerce test commanded a majority. Moreover, in the last analysis, the issue turns on what is fair and reasonable in order to satisfy due process. Leytham contends that we should take into account the factors urged by Justice Stevens in Asahi, that is, the volume, the value, and the hazardous character of the component, consistent with his view that no "unwavering line can be drawn between `mere awareness' that a component will find its way into the forum State and `purposeful availment' of the forum's market."
Whether we should depart from the standard announced in Alloy Wheels and embrace the view advocated by Leytham consistent with Justice Stevens's special writing in Asahi under the facts of this case cannot be satisfactorily addressed without the further discovery that is outstanding in the trial court, the subject of a motion to compel which has been granted, and a matter to which Duck Boo has disavowed any objection. In short, we are *912 persuaded that this petition is premature; therefore, under these circumstances, we cannot say that Duck Boo has made a showing that it has a clear right to relief at this stage of the proceedings.
PETITION DENIED.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
I agree with the majority's conclusion that this Court should reexamine the issue of in personam jurisdiction. In so doing, I note that thoughtful and scholarly opinions by federal and state courts alike have staked out positions on both sides of the minimum-contacts issue raised in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
Numerous jurisdictions have chosen to follow the "stream-of-commerce" approach urged by Justice Brennan and three other Justices in Asahi, see 480 U.S. at 116-21, 107 S.Ct. 1026. Federal appellate jurisdictions that have done so, or that at least have refrained from endorsing the alternative "stream-of-commerce-plus" approach urged by Justice O'Connor's plurality opinion, see Asahi, 480 U.S. at 112, 107 S.Ct. 1026, include the Fifth, Seventh, and Eighth Circuits. See Clune v. Alimak AB, 233 F.3d 538, 542 (8th Cir.2000) ("[P]ersonal jurisdiction may be exercised consonant with due process `over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.' [World-Wide Volkswagen v. Woodson, 444 U.S. 286] at 297-98 [(1980)], 100 S.Ct. 559."); Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 420 (5th Cir.1993) ("Asahi does not provide clear guidance on the `minimum contacts' prong, and therefore we will continue to follow the stream of commerce analysis in World-Wide Volkswagen." (emphasis added)); Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 (7th Cir.1992) ("Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative. We may not depart from Court precedent on the basis of a belief that present Supreme Court Justices would not readily agree with past Court decisions."). See also Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir.1980).
According to Professor Myrha's survey, cited in the majority opinion, 985 So.2d at 910 (citing Alison G. Myrha, Fifth Circuit Survey, June 2005-May 2006, Civil Procedure, 39 Tex. Tech L.Rev. 689, 718 n. 120 (2007)), a larger number of jurisdictions have expressed a preference for Justice O'Connor's stream-of-commerce-plus approach. Even those jurisdictions, however, or at least many of them, have not deemed the "plus" to require as much as this Court's opinion in Alloy Wheels appears to require when it states that "[e]vidence of an intent or purpose to serve `the American market,'" may not be sufficient to establish that a defendant has purposefully availed itself of the privilege of selling its product in any one state for purposes of minimum-contacts analysis. See Ex parte Alloy Wheels Int'l, Ltd., 882 So.2d 819, 827 (Ala.2003).[1]See, e.g., Tobin v. Astra Pharmaceutical Prods., Inc., 993 F.2d 528 (6th Cir.1993), cert. denied sub nom., Duphar, *913 B.V. v. Tobin, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); A. Uberti & C. v. Leonardo, 181 Ariz. 565, 892 P.2d 1354 (1995); compare Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir.1993) (referencing the varying views expressed in Asahi and concluding that "we need not determine which standard actually controls this case") with Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004) ("`the sale of goods in another state, knowing that they will be resold in Georgia, is a purposeful activity sufficient to establish a "contact" with Georgia'" (quoting Continental Research Corp. v. Reeves, 204 Ga. App. 120, 124, 419 S.E.2d 48, 52 (1992))). See also Kernan v. Kurz-Hastings, Inc., 175 F.3d 236 (2d Cir.1999) (not included in Myrha's survey, but echoing the Sixth Circuit Court of Appeals' explanation in Tobin that "purposeful availment" does not require the singling out of the forum state in some way different than any other state in a national marketing effort); Fogle v. Ramsey Winch Co., 774 F.Supp. 19, 22 (D.D.C.1991); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) (cited with approval by the United States Supreme in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
I also note that the denial of the petition in this case will allow the parties and the trial court to conduct discovery and to examine what is considered a second prong in the due-process analysis. As the Supreme Court explained in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), general considerations of fundamental fairness can affect the sufficiency of a defendant's contacts with a forum state. Such considerations can include:
"`the burden on the defendant,' `the forum State's interest in adjudicating the dispute,' `the plaintiff's interest in obtaining convenient and effective relief,' `the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the `shared interest of the several States in furthering fundamental substantive social policies.' World-Wide Volkswagen [v. Woodson], 444 U.S. [286], at 292 [ (1980) ]. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required...."
471 U.S. at 477-78, 105 S.Ct. 2174. On the other hand, the Burger King Court reasoned, such considerations "may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." 471 U.S. at 478, 105 S.Ct. 2174 (citing Restatement (Second) of Conflict of Laws §§ 36-37 (1971)). These general considerations of fundamental fairness, rather than a minimum-contacts analysis per se, provided the alternative ground for decision in the view of the O'Connor plurality, as explained in Part II.B of its Asahi opinion, Asahi, 480 U.S. at 113-16, 107 S.Ct. 1026, and that provided the basis for the special concurrences of the other five Justices in that case. See Asahi, 480 U.S. at 116-21, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment, and citing Part II.B. of the O'Connor plurality opinion), and Asahi, 480 U.S. at 121-22, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment, and also citing Part II.B. of the O'Connor plurality opinion).
NOTES
[1] I therefore question the majority's reference to the 19 jurisdictions identified as "stream-of-commerce-plus" jurisdictions in Professor Myrha's survey as also being jurisdictions that "adhere to a test comparable to the test used in Alloy Wheels." See 985 So.2d at 910.