PARKER, Justice.
International Creative Management Partners, LLC, d/b/a ICM Partners ("ICM"), petitions this Court for a writ of mandamus directing the Mobile Circuit Court to vacate its order denying ICM's motion to dismiss the action filed against it by Jordan Taylor Pardue, a minor, and Terrie Pardue, individually and as Jordan's mother and next friend (hereinafter collectively referred to as "the Pardues"), on the basis that the circuit court lacked personal jurisdiction over it and to issue an order granting its motion. We grant the petition and issue the writ.
Facts and Procedural History
ICM, a limited liability company existing under the laws of the State of Delaware and registered to do business in California and New York, is a literary and talent agency that represents numerous clients throughout the world. ICM's clients perform at various venues around the United States, including venues in Alabama. According to ICM's petition, ICM's principal place of business is in Los Angeles, California. None of ICM's members or managers reside in Alabama, and ICM does not own or lease property in Alabama, is not registered with the Alabama Secretary of State to do business in Alabama as a foreign entity, and "does not direct efforts *1113 regarding sales, marketing, or advertising to individuals or businesses located in Alabama."
Nick Storch, a talent agent employed by ICM at all times relevant to this case, worked out of ICM's New York office. One of the ICM clients assigned to Storch was Cannibal Corpse, a "death-metal" music band that is "owned, managed, promoted and/or controlled" by C.C. Touring Co., Inc., a Florida company. Red Mountain Entertainment, an Alabama company, contacted Storch to inquire about scheduling Cannibal Corpse for a live concert to be performed at Soul Kitchen Music Hall in Mobile, Alabama, on June 27, 2014. Storch, acting as agent for Cannibal Corpse and C.C. Touring, negotiated the details of the concert with Trevor Starnes, an employee of Red Mountain Entertainment. Storch stated in his affidavit testimony that all the fee negotiations were conducted by telephone and e-mail and that "[n]o ICM employees ... ever traveled to Alabama." Based on those negotiations, C.C. Touring and Red Mountain Entertainment entered into a contract, which ICM drafted. ICM received a $250 commission for booking Cannibal Corpse with Red Mountain Entertainment.
On June 27, 2014, Jordan[1] attended the Cannibal Corpse concert at Soul Kitchen Music Hall. The Pardues state in their response to ICM's petition that, during the concert, "the crowd became violent and Jordan ... was thrown to the ground, suffering a spinal cord injury." The Pardues alleged in their complaint that it was, or should have been, foreseeable "that patrons attending Cannibal Corpse concerts exhibit violent behavior, including ... forming 'mosh pits' and/or dancing, running[,] jumping or otherwise physically contacting other patrons during the concert." The Pardues state that Jordan's total medical bills for treating the injuries Jordan incurred at the concert exceed $1.2 million.
On July 3, 2014, the Pardues sued "Soul Kitchen Music Hall" and The Club at 219 Dauphin, Inc. ("the Club"), an Alabama company that owns, manages, and operates the Soul Kitchen Music Hall. On July 23, 2015, the Pardues amended their complaint to add ICM as a defendant. The Pardues, after amending their complaint a fourth time, alleged against ICM claims of negligence, wantonness, and "inciting imminent violence." The Pardues did not sue Red Mountain Entertainment.
On May 24, 2016, ICM filed a motion to dismiss the Pardues' claims against it under Rule 12(b)(2), Ala. R. Civ. P. ICM argued that Rule 4.2(b), Ala. R. Civ. P., Alabama's "long-arm" rule, did not operate to give the circuit court personal jurisdiction over ICM. Rule 4.2(b) states, in pertinent part:
"An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States ...."
On May 10, 2017, following some discovery related to the issue of the circuit court's personal jurisdiction over ICM, the Pardues filed a response to ICM's motion to dismiss, which the circuit court denied on July 31, 2017. The circuit court concluded that ICM's contacts with Alabama were such that it had general jurisdiction and specific jurisdiction over ICM.[2] ICM then *1114 petitioned this Court for mandamus review of the circuit court's order denying its motion to dismiss.
Standard of Review
"We recently addressed the standard of review in a proceeding challenging the trial court's ruling on a motion to dismiss for lack of personal jurisdiction in Ex parte Bufkin, 936 So.2d 1042, 1044-45 (Ala. 2006) :
" ' " 'The writ of mandamus is a drastic and extraordinary writ, to be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993) ; see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).' Ex parte Carter, [807 So.2d 534,] 536 [ (Ala. 2001) ]."
" ' Ex parte McWilliams, 812 So.2d 318, 321 (Ala. 2001). "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala. 2002).
" ' " ' "In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and 'where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.' Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) )." '
" ' " Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala. 2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala. 2001) ). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.' Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D. Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) ). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995) ('When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.') (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984) )."
" ' Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala. 2004).' "
Ex parte Duck Boo Int'l Co., 985 So.2d 900, 905-04 (Ala. 2007).
Discussion
The only issue before this Court is whether the circuit court's assertion of personal jurisdiction over ICM comports with due process of law as guaranteed by *1115 the Fourteenth Amendment to the United States Constitution. This Court recently set forth the applicable law in Hinrichs v. General Motors of Canada, Ltd., 222 So.3d 1114, 1120-22 (Ala. 2016) :
"In Robinson v. Harley-Davidson Motor Co., 354 Or. 572, 316 P.3d 287 (2013), the Supreme Court of Oregon, addressing the issue whether asserting jurisdiction over a foreign corporation comports with due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, aptly summarized the current status of the United States Supreme Court's holdings, including Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). The Robinson court stated:
" 'Under Supreme Court jurisprudence, an exercise of jurisdiction over a nonresident defendant comports with due process if there exists "minimum contacts" between the defendant and the forum state such that maintaining suit in the state would "not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotation marks omitted); see also International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "). Due process is thus satisfied if "the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 559.
" 'In applying that test, the Supreme Court has recognized that jurisdiction over a nonresident may be either general or specific. Goodyear [Dunlop Tires Operations, S.A. v. Brown], 564 U.S. [915] at 919, 131 S.Ct. [2846] at 2851[ (2011) ] ; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting distinction between general and specific jurisdiction); see Willemsen [v. Invacare Corp.], 352 Or. 191, 197, 282 P.3d [867,] 867 [ (2012) ]. General jurisdiction exists when the defendant's affiliations with the forum state "are so 'continuous and systematic' " as to render the defendant "essentially at home in the forum State." Goodyear, [564] U.S. at [919], 131 S.Ct. at 2851 ; see Willemsen, 352 Or. at 197, 282 P.3d at 867. Stated differently, general jurisdiction is present in " 'instances in which the continuous ... operations within a state [are] so substantial and of such a nature as to justify suit against [the defendant] on causes of actions arising from dealings entirely distinct from those activities.' " Goodyear, [564] U.S. at [924], 131 S.Ct. at 2853 (first alteration in original; quoting International Shoe, 326 U.S. at 318, 66 S.Ct. at 154 )....
" 'Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, [564] U.S. at [919], 131 S.Ct. at 2851 (alteration in original); see Willemsen, 352 Or. at 197, 282 P.3d at 867. In other words, specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected *1116 with, the very controversy that establishes jurisdiction.' " Goodyear, [564] U.S. at [919], 131 S.Ct. at 2851 (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966) ).
" 'The analytical framework for determining whether specific jurisdiction exists consists of three inquiries. See [State ex rel.] Circus Circus [Reno, Inc. v. Pope], 317 Or. [151,] 159-60, 854 P.2d 461[, 465 (1993) (en banc) ] (laying out analytical framework). First, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The requirement that a defendant purposefully direct activity to the forum state precludes the exercise of jurisdiction over a defendant whose affiliation with the forum state is "random," "fortuitous," or "attenuated," or the "unilateral activity of another party or a third person." Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (internal citation marks omitted); see also State ex rel. Jones v. Crookham, 296 Or. 735, 741-42, 681 P.2d 103[, 107] (1984) (requirements of due process not met when defendant's contacts with Oregon are "minimal and fortuitous").
" 'Second, the action must "arise out of or relate to" the foreign defendant's "activities in the forum State." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ; Burger King, 471 U.S. at 472, 105 S.Ct. 2174. Stated differently, for an exercise of specific jurisdiction to be valid, there must be "a 'relationship among the defendant, the forum, and the litigation.' " Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ). In further explaining that relationship, the Supreme Court recently highlighted two means by which specific jurisdiction attaches: Jurisdiction may attach if a party engages in "activity [that] is continuous and systematic and that activity gave rise to the episode-in-suit." Goodyear, [564] U.S. at [923], 131 S.Ct. at 2853 (internal quotation marks omitted; emphasis in original). Jurisdiction may also attach if a party's "certain single or occasional acts in a State [are] sufficient to render [him or her] answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." Id. (internal quotation marks omitted). Thus, as articulated by the Court, an exercise of specific jurisdiction is appropriate in cases where the controversy at issue "derive[s] from, or connect[s] with" a defendant's forum-related contacts. Id. at [919], 131 S.Ct. at 2851.
" 'Finally, a court must examine whether the exercise of jurisdiction over a foreign defendant comports with fair play and substantial justice, taking into account various factors deemed relevant, including an evaluation of the burden on a defendant, the forum state's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of controversies, and furthering fundamental social policies. Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ; Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174 ; see Circus Circus, 317 Or. at 159-60, 854 P.2d 461.'
" 354 Or. at 577-80, 316 P.3d at 291-92 (third emphasis original; other emphases added; footnote omitted)."
*1117 In the present case, the circuit court denied ICM's motion to dismiss based on its conclusion that it had both general and specific jurisdiction over ICM. In its petition before this Court, ICM argues that the circuit court erred in concluding that it had general and specific jurisdiction over ICM. ICM makes extensive argument concerning the circuit court's assertion of general jurisdiction over it. The Pardues concede that the circuit court erred in concluding that it had general jurisdiction over ICM. We agree with the parties. There is nothing before this Court indicating that ICM's contacts with Alabama " ' "are so 'continuous and systematic' " as to render [ICM] "essentially at home in [Alabama]." Goodyear, [564] U.S. at [919], 131 S.Ct. at 2851.' " Hinrichs, 222 So.3d at 1121. ICM's rare provision of booking services to its clients who perform in Alabama is not sufficient contacts on which to assert general jurisdiction over ICM. ICM has demonstrated, and the Pardues agree, that the circuit court erred in asserting general jurisdiction over ICM.
We now turn to whether the circuit court was correct in asserting specific jurisdiction over ICM. In Hinrichs, this Court provided a summary of the applicable precedents of the United States Supreme Court concerning the kind of conduct required for the assertion of specific jurisdiction:
" Walden [v. Fiore, 571 U.S. 277 (2014),] makes it clear that, absent general jurisdiction, the precedents of the United States Supreme Court require that, for specific jurisdiction to exist, [the defendant's] in-state activity must 'g[i]ve rise to the episode-in-suit,' Goodyear, 564 U.S. at 923 and involve ' "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction," ' 564 U.S. at 919. Moreover, Walden clearly holds that whether a forum state can constitutionally assert specific jurisdiction over a nonresident defendant ' "focuses on 'the relationship among the defendant, the forum, and the litigation.' " ' Walden, 571 U.S. at 284, 134 S.Ct. at 1121 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), quoting in turn Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ). Walden then clearly instructs that if a state is to exercise jurisdiction consistent with due process, 'the defendant's suit-related conduct must create a substantial connection with the forum State.' 571 U.S. at 284, 134 S.Ct. at 1121 (emphasis added)."
Hinrichs, 222 So.3d at 1137-38.
ICM argues in its petition that "the relationship between ICM's conduct ... and the harm that occurred at Soul Kitchen [Music Hall] ... is simply too tenuous to support specific jurisdiction." ICM argues that it conducted no activity in Alabama that would give rise to the Pardues' lawsuit. The facts of ICM's involvement in this case are undisputed. Red Mountain Entertainment contacted ICM based on its knowledge that ICM was Cannibal Corpse's agent; there is nothing indicating that ICM marketed its representation of Cannibal Corpse in Alabama. ICM negotiated, on behalf of C.C. Touring, with Red Mountain Entertainment the details of a live concert to be performed by Cannibal Corpse at Soul Kitchen Music Hall. Based on ICM's negotiations with Red Mountain Entertainment, C.C. Touring and Red Mountain Entertainment entered into a standard performance contract, drafted by ICM, in which Cannibal Corpse agreed to perform at Soul Kitchen Music Hall and Red Mountain Entertainment agreed to pay C.C. Touring a fee of $2,500. ICM received $250 as a commission for its work *1118 in booking Cannibal Corpse with Red Mountain Entertainment. Other than arranging the booking, ICM had no involvement with the details of Cannibal Corpse's performance at Soul Kitchen Music Hall.
We agree with ICM. As set forth in Hinrichs, we focus our analysis on the relationship among ICM, Alabama, and the litigation. First, as it relates to the facts of this case, ICM had no relationship with Alabama until Red Mountain Entertainment contacted ICM. ICM then negotiated on behalf of C.C. Touring the booking details of a one-time appearance in Alabama by Cannibal Corpse. In Hinrichs, this Court quoted the following relevant portion of Walden v. Fiore, 571 U.S. 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) :
" '[O]ur "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. See, e.g., International Shoe [Co. v. Washington, 326 U.S. 310,] 319[ (1945) ] (Due process "does not contemplate that a state may make binding a judgment in personam against an individual ... with which the state has no contacts, ties, or relations"); Hanson [v. Denckla, 357 U.S. 235,] 251[ (1958) ] ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him"). Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, Burger King [Corp. v. Rudzewicz, 471 U.S. 462,] 479-480[ (1985) ], or by circulating magazines to "deliberately exploi[t]" a market in the forum State, Keeton [v. Hustler Magazine, Inc., 465 U.S. 770,] 781[ (1984) ]. And although physical presence in the forum is not a prerequisite to jurisdiction, Burger King, supra, at 476, physical entry into the State-either by the defendant in person or through an agent, goods, mail, or some other means-is certainly a relevant contact. See, e.g., Keeton, supra, at 773-774.' "
Hinrichs, 222 So.3d at 1136-37 (quoting Walden, 571 U.S. at 285, 134 S.Ct. at 1122 (emphasis added) ). There is nothing before us indicating that ICM reached out beyond its home states to Alabama by entering into a contract that envisioned ICM's having "continuing and wide-reaching contacts" in Alabama. In fact, ICM did not enter into any contract germane to the Pardues' claims. Rather, as stated above, ICM simply facilitated the performance agreement between C.C. Touring and Red Mountain Entertainment at the unsolicited request of Red Mountain Entertainment.
Second, ICM has very little relationship to the claims asserted by the Pardues. The Pardues' claims allege negligence, wantonness, and inciting imminent violence. The Pardues' claims arise out of injuries Jordan incurred at Soul Kitchen Music Hall during the Cannibal Corpse concert. Other than negotiating the performance agreement between C.C. Touring and Red Mountain Entertainment, ICM had no part in planning the actual concert, and ICM had no control over Soul Kitchen Music Hall. The Pardues claim that it was foreseeable that the Cannibal Corpse concert would incite violence among the patrons attending the concert. However, the Pardues have not explained how this assertion pertains to ICM's relationship to the litigation for purposes of specific jurisdiction. ICM's relationship with the litigation is very minor.
*1119 We must also consider whether ICM's activity in Alabama gave rise to the episode-in-suit. As discussed above, ICM's only activity even remotely related to Alabama was its negotiation of the performance agreement between C.C. Touring and Red Mountain Entertainment. However, this was not activity in Alabama but activity with an entity located in Alabama. Other than arranging the booking of Cannibal Corpse, ICM had no involvement with the actual performance by Cannibal Corpse at Soul Kitchen Music Hall where Jordan incurred the injuries that are the basis of this action. For this reason alone it appears that ICM had no activity in Alabama giving rise to the episode-in-suit. Moreover, assuming that ICM did engage in activity in Alabama, it does not appear that ICM's activity gave rise to the episode-in-suit. ICM merely negotiated the agreement between C.C. Touring and Red Mountain Entertainment that led to Cannibal Corpse performing at Soul Kitchen Music Hall; ICM had no involvement with the concert or venue beyond those initial negotiations. The Pardues allege in their complaint that the negligence and wantonness of the defendants on the night of the concert led to Jordan's injuries. The Pardues argue in their brief before this Court that ICM should have foreseen the possibility that a patron attending the Cannibal Corpse concert could get injured. However, even assuming reasonable foreseeability, the Pardues have not explained how ICM's activity gave rise to the episode-in-suit. We conclude that ICM's negotiation of the performance agreement between C.C. Touring and Red Mountain Entertainment did not give rise to the episode-in-suit. ICM has demonstrated that there is no " ' "clear, firm, nexus between the acts of [ICM] and the consequences complained of." ' " Ex parte Alamo Title Co., 128 So.3d 700, 710 (Ala. 2013) (quoting Elliott v. Van Kleef, 830 So.2d 726, 731 (Ala. 2002), quoting in turn Duke v. Young, 496 So.2d 37, 39 (Ala. 1986) ).
Lastly, based on the facts that ICM's relationship with Alabama is very tenuous, that the claims asserted by the Pardues do not arise out of or relate to ICM's contacts with Alabama, and that ICM's activities did not give rise to the episode-in-suit, we conclude that the exercise of jurisdiction over ICM does not comport with fair play and substantial justice.
Conclusion
ICM has demonstrated a clear legal right to a writ of mandamus directing the Mobile Circuit Court to vacate its order denying ICM's motion to dismiss for lack of personal jurisdiction and to enter an order dismissing ICM from the underlying action.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Shaw, Main, Wise, and Sellers, JJ., concur.
Bryan, J., concurs in the result.

According to the complaint, at all relevant times Jordan was 18 years old, but he was married and had been relieved of his disability of minority.

The circuit court based its conclusion that it had general jurisdiction over ICM on the fact that four other clients of ICM's had also been booked to perform in Alabama. Those bookings have no relation to the facts of this case.