**AKEVA L.L.C., a North Carolina Corporation, Plaintiff,**

v.

**MIZUNO CORPORATION, a Japanese Corporation, Mizuno USA, Inc., a Georgia Corporation, Defendants.**

**No. 1:00CV978.**

United States District Court, M.D. North Carolina.

March 12, 2002.

William C. Connor, Tuggle Duggins & Meschan, P.A., Greensboro, NC, Patrick J. Flinn, Alston & Bird, Atlanta, GA, for Plaintiff.

James Jason Link, John Steven Gardner, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, Douglas D. Salyers, Troutman Sanders, Atlanta, GA, for Defendants.

### MEMORANDUM OPINION and ORDER

OSTEEN, District Judge.

Akeva L.L.C. ("Akeva"), a North Carolina corporation, initiated this suit alleging patent infringement and inducing patent infringement against Mizuno Corporation ("Mizuno"), a Japanese company, and its wholly owned subsidiary Mizuno USA, Inc. ("Mizuno USA"), a Georgia corporation. Mizuno has moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] The parties are currently engaged in discovery. At this time, Mizuno's motion will be denied.[2]

---

1. Mizuno also filed a motion requesting that the court reconsider its order allowing discovery in this case to begin in advance of the jurisdiction ruling and a motion requesting expedited briefing on that matter. Both motions are mooted by this opinion.

2. In addition, Akeva has filed a motion to strike several of the affirmative defenses set forth by Mizuno USA in its Answer. At this time, the court does not find that the defenses in question are insufficient, nor that they are "redundant, immaterial, impertinent, or scandalous." Fed.R.Civ.P. 12(f). Therefore, Akeva's motion will be denied. Akeva may raise the matter again should it become pertinent.

## I. BACKGROUND

Plaintiff Akeva holds several patents in the athletic technology field, including the two patents on athletic shoe technology at issue here. Defendant Mizuno manufactures and sells sporting goods primarily to the Japanese market. Sporting goods sold under the Mizuno trademark in the United States are sold by Mizuno's United States subsidiary, Mizuno USA. Mizuno USA has significant contacts with North Carolina and has not contested this court's personal jurisdiction over it.

According to the Declaration of Mitsuo Hasegawa, Mizuno's Senior Manager of Overseas Business, Mizuno has had very limited contacts with the United States or with North Carolina since 1996, when it established Mizuno USA to develop the North and South American sporting goods markets for sporting goods bearing the Mizuno trademark. According to Hasegawa, Mizuno USA is maintained as an independent subsidiary, with its own directors and management. Mizuno does not ship goods to Mizuno USA for sale. Rather, Mizuno and Mizuno USA have an exclusive license arrangement, whereby Mizuno's trademarks and technical information, including any patents, are licensed to Mizuno USA for use in the North and South American Markets. Mizuno USA arranges for the manufacture of sporting goods incorporating this information and sells the products throughout the United States.

Mizuno does provide support for Mizuno USA. Two Mizuno employees are assigned to Mizuno USA's Georgia headquarters and provide marketing and product development assistance. Other Mizuno employees travel regularly to Georgia, and sometimes to other parts of the United States, to assist Mizuno USA. In addition, Mizuno and its subsidiaries provide manufacturing support to Mizuno USA outside of the United States. Most relevant here, Mizuno USA uses Mizuno's Hong Kong subsidiary to monitor the Chinese factories which are contracted to manufacture the allegedly infringing athletic shoes for Mizuno USA.

## II. PERSONAL JURISDICTION

The plaintiff bears the burden of establishing personal jurisdiction over the defendant by a preponderance of the evidence. *Regent Lighting Corp. v. Galaxy Electrical Mfg.*, 933 F.Supp. 507, 509 (M.D.N.C.1996). However, when evaluating a motion to dismiss pursuant to Federal Rule 12(b)(2), if no evidentiary hearing is held, the plaintiff merely needs to establish a prima facie case of personal jurisdiction. *Id.* Under these circumstances, the court must construe all uncontroverted facts in the light most favorable to the plaintiff. *Id.*

In patent cases, we apply the law of the Federal Circuit to determine personal jurisdiction rather than the law of the Fourth Circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed.Cir.1994). Personal jurisdiction requires the court to undertake a two-step inquiry. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997). First, since the federal statute at issue here does not provide for service of process, we must apply the state long-arm statute to determine whether jurisdiction is authorized in this forum. *Id.* Second, we must ask whether the exercise of jurisdiction in the forum state comports with due process. *Id.*

### A. Long–Arm Analysis

We begin with the long-arm analysis. In general, North Carolina's long-arm statute is intended to stretch to the limits that due process will allow, and is therefore to be construed liberally in favor of finding jurisdiction. *See Vishay Intertech-*

*nology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062, 1065 (4th Cir.1982). For this reason, some courts have held that the personal jurisdiction inquiry collapses into whether the due process requirements are met. *See Regent Lighting,* 933 F.Supp. at 510; *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993); *Hanes Co. v. Ronson,* 712 F.Supp. 1223, 1226 (M.D.N.C.1988). Still other courts have insisted on evaluating the state long-arm question independent from the due process question. *See Plant Genetic Sys. v. Ciba Seeds,* 933 F.Supp. 519, 522–23 (M.D.N.C.1996); *Crown Cork & Seal Co. v. Dockery,* 886 F.Supp. 1253, 1257 (M.D.N.C.1995). It strains the court's imagination to come up with a situation in which the state long-arm statute, itself coincident with due process, is somehow more restrictive, resulting in an exercise of jurisdiction that comports with due process but is not authorized by the long-arm statute. Consistent with this difficulty, Mizuno cites to no cases, nor can the court find any, where a federal question case has been dismissed for lack of personal jurisdiction on North Carolina long-arm grounds even though the exercise of jurisdiction was constitutionally permissible. In any event, suffice it to say that the action here arises out of an alleged in-state injury—the sale of infringing goods or inducement to sell those same goods in North Carolina. Personal jurisdiction is therefore authorized under North Carolina General Statute § 1–75.4(4).

### B.   Due Process Analysis

■   We now turn to the due process analysis. The Federal Circuit uses the minimum contacts standard originally fashioned in Fourteenth Amendment due process cases to analyze Fifth Amendment due process cases, such as this one. *Akro Corp. v. Luker,* 45 F.3d 1541, 1544–45 (Fed.Cir.1995). Under this standard, a defendant must have certain minimum con-

tacts with the forum state such that the exercise of jurisdiction there "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted) (internal quotation marks omitted). Analytically, personal jurisdiction has been divided into two categories, general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984). General jurisdiction arises when a defendant has "continuous and systematic" contacts with the forum state such that make it amenable to process. *Id.* at 415, 104 S.Ct. at 1872 (citation omitted). Specific jurisdiction can arise out of even a single contact with the forum state if the claim "arises out of" that contact. *Id.* at 414, 104 S.Ct. at 1872 (citation omitted). Akeva claims that it needs discovery to produce evidence that Mizuno is subject to general jurisdiction in North Carolina. However, Akeva asserts that Mizuno is subject to specific jurisdiction in North Carolina.

In a case such as this, the most useful approach to determining whether the minimum contacts standard has been satisfied is the "stream of commerce" theory. *See Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 427 (Fed.Cir.1996). Under this theory, a defendant has minimum contacts with the forum when it purposefully ships a product into the forum state through an "established distribution channel." *Beverly Hills,* 21 F.3d at 1565. The forum state may then exercise specific personal jurisdiction over the defendant as long as that exercise does not offend the notions of "fair play and substantial justice." *Id.* at 1568 (citation omitted).

Mizuno asserts that this case is controlled by *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355 (Fed.

Cir.1998). There, the Minnesota-based plaintiff filed a declaratory judgment action against the New Mexico-based defendant in Minnesota. The defendant did not manufacture anything itself, but rather licensed its patents to independent distributors, some of whom then sold those products in Minnesota. The defendant had no control over the actions of the licensees. The only direct contact that the defendant had with Minnesota was infringement letters sent to the plaintiff.

On these facts, the Federal Circuit found that the defendant did not have sufficient minimum contacts to subject it to jurisdiction in Minnesota. The licensees' activities in the forum state were not sufficient to subject the defendant to the jurisdiction of the court, as "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]." *Id.* at 1361. Defendant did not direct its activities at the forum state, since it exercised no control over the activity of the licensees. *Id.* at 1362. Further, the license agreement imposed no further duties on the defendant but was merely a covenant not to sue, which never entered the stream of commerce. *Id.* Therefore, the court concluded that the plaintiff had not established that the defendant had sufficient contacts with the forum state.

Mizuno claims that it does not manufacture any of the products sold in North Carolina but merely licenses its patents and technical information to Mizuno USA, which in turn arranges for the manufacture of goods and then sells those goods throughout the United States, including North Carolina. Therefore, Mizuno claims that it has not placed any products into the stream of commerce. Mizuno itself has had no direct contact with North Carolina that relates to the sale of the allegedly infringing goods, at least since 1996. Accordingly, Mizuno claims that it has not

purposely directed its activities toward North Carolina.

However, the defendant in *Red Wing* had no control over the activities of its multiple licensees and had no continuing obligations to its licensees. This differs markedly from the case at bar. Mizuno USA is the wholly owned subsidary and exclusive licensee of Mizuno. Further, Mizuno does participate to some degree in the Mizuno USA's manufacture and marketing of the allegedly infringing products.

Akeva argues that this case is controlled by the Federal Circuit's opinion in *Beverly Hills*, 21 F.3d 1558. There, the plaintiff filed an infringement suit in Virginia against a Chinese corporation that made ceiling fans and the New Jersey corporation that imported the fans. The only contact that the defendants had with the forum state was that the fans were sold through a Virginia retailer. The court found that this was sufficient to establish personal jurisdiction because "[the] defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566.

As in *Beverly Hills*, Mizuno and Mizuno USA acted in consort to sell the allegedly infringing goods in North Carolina. The main difference is that the Chinese corporation in *Beverly Hills* actually manufactured the infringing products, rather than simply licensing the technology underlying them. However, the court sees little difference, at least with respect to a claim of inducing infringement, between licensing infringing technology with the intent that the licensee sell products using that technology and actually manufacturing an infringing product and having it sold through a distributor.

Notably absent in the *Beverly Hills* opinion is any mention of control of the importer by the Chinese company. Mizuno argues vigorously that it does not control Mizuno USA, that it is not the alter ego of Mizuno USA, and that the court should not pierce the corporate veil to make Mizuno liable for Mizuno USA's actions.[3] Mizuno is correct that there is not sufficient evidence to pierce the corporate veil, and the court sees no reason to disregard the corporate form. However, Plaintiff need not pierce the corporate veil to show that Mizuno is amenable to jurisdiction here. Plaintiff need only show that Mizuno created a distribution channel to exploit the North American market. By its own admission, Mizuno established Mizuno USA to develop the United States market, including North Carolina. Plaintiff has therefore met its burden.

■ Finally, having found that the requisite minimum contacts exist to subject Mizuno to jurisdiction in North Carolina, we must consider whether the exercise of that jurisdiction would offend the notions of fair play and substantial justice. We must "consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Ind. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). Further, we must consider efficient resolution of the claims presented and the furthering of "fundamental substantive social policies." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). In *Asahi,* the forum state's interest was low because neither litigant was a citizen of

that state. *Id.* at 114, 107 S.Ct. at 1033. The burden on the defendant was high, as exercise of jurisdiction would have forced it to litigate in a foreign forum. *Id.* The Court concluded that the exercise of personal jurisdiction under these circumstances would be "unreasonable and unfair." *Id.* at 113, 107 S.Ct. at 1034.

By contrast, the *Asahi* Court noted that once "minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114, 107 S.Ct. at 1033. This is the situation before us here. North Carolina has a significant interest in providing a forum for its residents, and Akeva has a significant interest in litigating in its home forum. Further, the burden on Mizuno is somewhat mitigated by the fact that its wholly owned subsidiary will be subject to this court's jurisdiction regardless of the outcome of this motion. This is simply not one of the rare cases "in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Viam Corp.,* 84 F.3d at 429 (citations omitted).

IT IS ORDERED that Defendant Mizuno's Motion to Dismiss [7] is denied.

IT IS FURTHER ORDERED that Plaintiff Akeva's Motion to Strike Affirmative Defenses of Defendant Mizuno USA [12] is denied.

---

**3.** As evidence of Mizuno's control over Mizuno USA, Akeva offered evidence that at a settlement meeting, representatives of Mizuno USA stated that the company could not enter an agreement absent the consent of Mizuno. Mizuno moved to exclude the evidence as inadmissible under Federal Rule of Evidence

408. As the statement plays no role in the court's decision, Mizuno's motion will be denied. In the event that Akeva attempts to introduce the evidence at a later date, the court will then hear from the parties on the merits of the issue.

IT IS FURTHER ORDERED that Defendant Mizuno's Motion to Exclude Evidence of Statement Made in Settlement Negotiations [16] is denied.

IT IS FURTHER ORDERED that Defendant Mizuno's Motion for Reconsideration [27] and Motion for Expedited Briefing [28] are denied as moot.